**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GEORGIANNE McENTYRE, Individually and as Administrator of the Estate of HENRIETTA EUTOKEA DREW<br><br>     Plaintiff,<br><br>  v.<br><br>SOUTHEASTERN VETERANS' CENTER, a skilled nursing facility;<br><br>AND<br><br>ROHAN BLACKWOOD, NHA, in his individual capacity;<br><br>AND<br><br>JOHN DOE 1 – THIRD PARTY MANAGEMENT COMPANY; JOHN DOE 2 – THIRD PARTY STAFFING COMPANY; and JOHN DOE 3 – THIRD PARTY MANAGEMENT COMPANY (fictitious designations representing the as yet unknown individual(s), partnerships, corporations, and/or other business entities, individually, jointly, severally and/or in the alternative affiliated or connected in any way with Plaintiff's care and/or otherwise responsible for Plaintiff's injuries.<br><br>AND<br><br>COMPASSUS HOSPICE AND PALLIATIVE CARE – PHILADELPHIA; AND COMPASSUS – GREATER PHILADELPHIA; AND COMPASSUS – PHILADELPHIA II; AND COMPASSUS OP PENNSYLVANIA, LLC<br><br>     Defendants. | Civ. No: |

**PLAINTIFF'S COMPLAINT**

AND NOW, comes the Plaintiff, Georgianne McEntyre, Individually and as Administrator of the Estate of Henrietta Drew, by and through her undersigned counsel, Jim McEldrew, Esquire, Daniel Purtell, Esquire; Andrew P. Watto, Esquire; and the law firm of McEldrew Young Purtell Merritt, and files this Complaint against Defendants Southeastern Veterans' Center (hereafter "Southeastern VA"), a skilled nursing facility located in Spring City, Pennsylvania and operated by the Commonwealth of Pennsylvania's Department of Military and Veterans Affairs, and Defendant Rohan Blackwood, NHA in his individual capacity as the nursing home administrator or commandant of Defendant Southeastern VA, for unlawful deprivations of Plaintiff's decedent's federal rights guaranteed by the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal Nursing Home Reform Act ("FNHRA"); 42 U.S.C. § 1396r, *et al.*; and the implementing regulations found at 42 C.F.R. § 483, *et al*, enforceable under 42 U.S.C. § 1983, negligence, and wrongful death, and against Defendants, Compassus Hospice And Palliative Care – Philadelphia; and Compassus – Greater Philadelphia; and Compassus – Philadelphia II; and Compassus OP Pennsylvania, LLC, for negligence and wrongful death, and in support thereof, avers as follows:

**JURISDICTION AND VENUE**

1.      This instant case asserts claims of wrongful death and survival actions pursuant to 42 U.S.C. § 1983 to remedy deprivation of rights guaranteed by the Omnibus Budget Reconciliation Act 1987, the Federal Nursing Home Reform Act; and the Federal Nursing Home Regulations, as found at 42 C.F.R. §483.

2.      As the instant case presents issues of federal law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C § 1331.

2

3.      As the Court has original jurisdiction over Plaintiff's Section 1983 claim pursuant to 28 U.S.C. §1367, the Court has supplemental jurisdiction over Plaintiff's state law claims of negligence and vicarious liability, as they are so related to Plaintiff's two separate negligence claims in this action that fall within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue lies within this judicial district, since all the actions complained of herein occurred within the Eastern District of Pennsylvania.

## JURY DEMAND

5.      Plaintiff, Georgianne McEntyre, individually and as administrator of the Estate of Henrietta Drew deceased, demands a trial by jury.

## PARTIES

6.      Plaintiff, Georgianne McEntyre, is an adult individual who resides at 41 Franklin Ave. Phoenixville, PA 19460.

7.      Georgianne McEntyre is the daughter of Henrietta Drew, deceased.

8.      Georgianne McEntyre was appointed the Administrator of the Estate of Henrietta Drew, file number 1521-0270, on February 5, 2021 by the Register of Wills of Chester County.

9.      Georgianne McEntyre brings this action as the personal representative of decedent, Henrietta Drew, on her own behalf and on behalf of all those entitled by law to recover damages for the wrongful death of decedent Henrietta Drew.

10.     The only wrongful death beneficiaries entitled to recover wrongful death damages for the death of Henrietta Drew are as follows:

a.  Georgianne McEntyre, daughter – listed above.

11.     Defendant, Southeastern VA, is a skilled-nursing facility located in Spring City, Pennsylvania.

12.     Defendant Southeastern VA is a state run skilled-nursing facility controlled, owned and/or operated by the Commonwealth of Pennsylvania's Department of Military and Veterans Affairs.

13.     As such, at all times relevant hereto, Southeastern VA is a governmental agency acting under the color of state law.

14.     At all times relevant hereto, Southeastern VA operated as a "long term care nursing facility" as that term is defined in 35 P.S. §448.802A.

15.     Accordingly, Southeastern VA is a "licensed professional" as that term is defined in 40 P.S. § 1303.503.

16.     At all times relevant hereto, Southeastern VA operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

17.     At the time of the incidents pled herein, Southeastern VA was acting under the control of the Pennsylvania Department of Veterans and Military Affairs and was acting by and through its authorized agents, servants and employees then and there acting within the course and scope of their employment.

18.     Defendant Rohan E. Blackwood, NHA (hereafter "Defendant Blackwood") is an adult individual residing at 1232 Corner Stone Blvd, Apt. 360, Downingtown, PA 19334.

19.     Defendant Blackwood was the commandant, or nursing home administrator at Southeastern VA from on or about February 2015, until he was suspended in May 2020.

20.     At the time of the incidents pled herein, Defendant Blackwood, was acting as the

4

commandant or nursing home administrator of Southeastern VA and was the final decision maker at Southeastern VA and the sole individual that was ultimately responsible for the health and safety of all residents, including Henrietta Drew.

21.     At all times relevant hereto, Defendant Blackwood, as the administrator or commandant of the facility, disregarded the consequences of his actions and/or caused negligent staffing levels at Southeastern VA to be set at such a level that the medical staff and/or personnel on duty could not reasonably attend to the needs of their assigned patients and/or properly perform the requirements of their employment.

22.     During his tenure as the nursing home administrator at Southeastern VA, Defendant Blackwood established substandard staffing levels that created foreseeable and unnecessary risks to the residents, including Henrietta Drew.

23.     Additionally, during his tenure as the nursing home administrator at Southeastern VA, Defendant Blackwood intentionally and knowingly disregarded resident acuity levels while making budgetary and staffing decisions, and knowingly disregarded the minimum time required by the staff to perform essential day-to-day functions and treatments.

•     Defendant Blackwood, as the final decision maker, also created and fostered an environment that encouraged, rewarded, and/or allowed staff to ignore policies and procedures of Southeastern VA put in place to protect the health and safety of its military veterans.

24.     Defendant Blackwood, as the final decision maker, also created and fostered an environment that encouraged, rewarded, and/or allowed staff to ignore state and federal nursing home regulations regarding the health and safety of its military veteran residents.

25.     At all the time relevant hereto, Southeastern VA and Defendant Blackwood jointly

exercised control over the operation and management of Southeastern VA prior to and during Henrietta Drew's period of residency therein, including but not limited to, the creation, setting, funding and/or implementation of budgets; the monitoring of resident acuity levels; the monitoring of staffing levels; control over resident admissions and discharges; control over the number of hours of direct care provided to the residents of Southeastern VA by RNs, LPNs, and CNAs, and implementation and compliance with facility policies and procedures and compliance with state and federal nursing home regulations.

26.     At all times relevant hereto, Defendant Southeastern VA and Defendant Blackwood had a duty, responsibility and/or an obligation to interview, screen, confirm qualifications, hire, train, employ, observe and retain only competent, trained, qualified and diligent staff, so as to ensure that proper medical care, observation, treatment and/or otherwise defined patient interaction, is rendered to individuals under their care with identified medical problems and/or concerns, such as those presented by Plaintiff's decedent.

27.     At all times relevant hereto, Defendant Southeastern VA and Defendant Blackwood had the sole duty, responsibility and/or obligation to ensure compliance with the standards of professional practice by their staff members and/or otherwise defined agents and were further responsible for overseeing and/or correcting their agents' respective conduct.

28.     At all times relevant hereto, Defendant Southeastern VA and Defendant Blackwood had the sole duty, responsibility and/or obligation to ensure that Orders were appropriately entered, implemented and complied with.

29.     At all times relevant hereto, Defendant Southeastern VA and Defendant Blackwood had the sole duty, responsibility and/or obligation to create, establish, implement, follow and/or

enforce policies, protocols and/or procedures necessary and sufficient to address the needs of the residents of Southeastern VA, such as Plaintiffs' decedent, so as to ensure that the necessary, timely and appropriate care would be provided to Plaintiffs' decedent, while under the care of the Defendants.

30.     At all times relevant hereto, Defendant Southeastern VA and Defendant Blackwood failed to provide necessary resources, including but not limited to, training, certification, and/or medical equipment, to meet the needs of the residents, including Plaintiff's decedent.

31.     At all times relevant hereto, Defendant Southeastern VA and Defendant Blackwood were on actual and/or constructive notice of the aforementioned actions and/or inactions which directly and proximately caused injury to Plaintiff's decedent.

32.     At all times relevant hereto, Henrietta Drew was a recipient of Medicare benefits pursuant to 42 U.S.C.A. §1395, *et seq.*

33.     Defendants,   JOHN DOE 1 – THIRD PARTY MANAGEMENT COMPANY; JOHN DOE 2 – THIRD PARTY STAFFING COMPANY; AND JOHN DOE 3 – THIRD PARTY MANAGEMENT COMPANY, fictitious names, the real names being unknown, providing management, nursing, professional and/or staffing services to Defendant, Southeastern Veterans' Center.

34.     Defendant, Compassus Hospice and Palliative Care – Philadelphia, is a Pennsylvania corporation that provides hospice and palliative care services to residents at facilities like Southeastern VA.

35.     Defendant, Compassus – Philadelphia II, is a Pennsylvania corporation that provides hospice and palliative care services to residents at facilities like Southeastern VA.

36.     Defendant, Compassus OP Pennsylvania, LLC, is a Delaware limited liability company that provides hospice and palliative care services to residents at facilities like Southeastern VA.

37.     Defendant, Compassus – Greater Philadelphia, is a Pennsylvania corporation that provides hospice and palliative care services to residents at facilities like Southeastern VA.

38.     At all times relevant hereto, Defendants, Compassus Hospice and Palliative Care – Philadelphia, Compassus – Philadelphia II, Compassus OP Pennsylvania, LLC and Compassus – Greater Philadelphia (hereafter "Compassus Defendants") had a duty, responsibility and/or an obligation to interview, screen, confirm qualifications, hire, train, employ, observe and retain only competent, trained, qualified and diligent staff, so as to ensure that proper medical care, observation, treatment and/or otherwise defined patient interaction, is rendered to individuals under their care with identified medical problems and/or concerns, such as those presented by Plaintiff's decedent.

39.     At all times relevant hereto, Compassus Defendants, and its agents, servants, including but not limited to RNs, LPNs, and CNAs, had a duty to provide competent medical care and treatment to hospice residents at Southeastern VA.

40.     At all times relevant hereto, Compassus Defendants, and its agents, servants, including but not limited to RNs, LPNs, and CNAs, had a duty to follow orders and care plans to keep residents like the decedent from serious injury and death.

41.     At all times relevant hereto, Compass Defendants, and its employees, agents, servants, including but not limited to RNs, LPNs and CNAs, provided hospice and palliative care and treatment to Plaintiff's decedent during her admission to Southeastern VA.

## STATEMENT OF CLAIMS

42.     At all times relevant hereto, Southeastern VA operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

43.     At all times relevant hereto, Defendant Blackwood was the commandant or nursing home administrator of Southeastern VA, and was the final decision maker on implementing, and compliance of policies and procedures for Southeastern VA.

44.     Defendant Blackwood was also the final decision maker concerning hiring, facility budget, training, and compliance with state and federal regulations, including but not limited to staffing levels and training.

45.     Defendant Blackwood was the final decision maker and ultimately responsible for the nursing care provided to residents like Henrietta Drew and was also responsible for maintaining the overall health and safety of residents such as Henrietta Drew.

46.     Defendant Blackwood was also the final decision maker at Southeastern VA for setting, funding and/or implementation of budgets, the monitoring of resident acuity levels; the monitoring and compliance of staffing levels; control over resident admissions and discharges; and control over the number of hours of direct care provided to the residents of Southeastern VA by RNs, LPNs, and CNAs.

47.     Defendant Blackwood, as the final decision maker, intentionally understaffed and underfunded Southeastern VA, and intentionally exposed all residents, including Henrietta Drew, to substandard care and increased risk of injuries and death, such as those suffered by Henrietta Drew.

48.     Defendant Blackwood's managerial and operational functions had an intentional

and direct impact on the amount and quality of care delivered to Henrietta Drew and were taken in furtherance of operational and managerial objectives.

49.     Further, Defendant Blackwood, had worked as a nursing home administrator at several other skilled nursing facilities in Pennsylvania and Connecticut prior to joining Southeastern VA in February 2015.

50.     In fact, Defendant Blackwood was named individually as a defendant in at least six medical professional liability actions in Lancaster County, Pennsylvania, some of which include allegations by Plaintiffs that skilled nursing facilities run by Defendant Blackwood were understaffed in an attempt to maximize profits and that said understaffing lead to resident injuries and death.  Some of these Complaints also allege that Defendant Blackwood failed to implement and ensure compliance with policies and procedures, and to ensure compliance with state and federal nursing home regulations, putting the health and safety of the residents at risk.[1]

51.     Specifically, one of these prior lawsuits alleged that Defendant Blackwood "mismanaged the Facility, under-budgeted the Facility; understaffed the Facility; failed to train or supervise the Facility's employees; failed to provide adequate and appropriate healthcare as described herein; engaged in incomplete, inconsistent and fraudulent documentation…failed to turn and reposition her every two hours; failed to transfer to the hospital following the fall that fractured her vertebrae…"[2]

52.     Additionally, another lawsuit where Defendant Blackwood was named as a

---

[1] *See* Lancaster County Common Pleas Case Nos: CI-15-01908; CI15-01468; CI-14-04449; CI-15-07921; C-14-09763; and CI-14-11005.
[2] *See* Joyce Richard v. GGNSC Lancaster LP d/b/a Golden Living Center – Lancaster, et al. Lancaster County No: 15-01468.

Defendant contained allegations that the facility where Defendant Blackwood was the nursing home administrator "failed to keep resident free from falls and accidents…failure to ensure that Resident did not suffer from new pressure sores and failure to ensure that her existing pressure sores did not worsen, as required by the standard of care…"  Additionally, the same Complaint alleges "grossly understaffing the Facility… and failure to maintain compliance with the governmental regulations to which Defendants' delivery of care is compared as part of the annual and complaint state survey process performed by the Department of Health."[3]

53.     Prior to becoming the commandant at Southeastern VA, Defendant Blackwood was understaffing the facilities he ran; not ensuring his staff was properly trained on fall risk, transfers, pressure injuries and identifying signs and symptoms of septic shock;  ignoring policies and procedures, and disregarding state and federal nursing home regulations, placing his residents at risk for serious injury and death.

54.     At all times relevant hereto, including during Henrietta Drew's residency, Defendant Blackwood was acting independently and in his capacity as a nursing home administrator and was the final decision maker that was responsible for the health and safety all the veteran residents at Southeastern VA.

55.     At all times relevant hereto Southeastern VA, held itself out as a professional in the field of adult nursing care, with the expertise necessary to maintain the health and safety of residents such as Ms. Drew.

56.     At all times relevant hereto, Southeastern VA held itself out as a skilled nursing and rehabilitation facility that meets federal criteria for Medicaid and Medicare reimbursement for

---

[3] *See* James D. Minich v. Golden Gate National Senior Care, LLC, et al. Lancaster County No: CI-14-04449.

nursing care.

57.     Southeastern VA was acting independently and by and through its authorized agents, servants and employees then and those acting within the course and scope of their employment.

58.     When Defendant Blackwood was hired and/or appointed to become the commandant or nursing home administrator at Southeastern VA in February 2015, Southeastern VA was aware of, and sought out Defendant Blackwood specifically because of his management style that included understaffing the nursing home and/or skilled-nursing facilities that Defendant Blackwood ran as the nursing home administrator, ignoring or failing comply with state and federal nursing home regulations, and to run a facility with little or no disregard for the health and safety of the residents, and to instead to focus lowering the cost of operating the facility.

59.     Southeastern VA hired or appointed Defendant Blackwood in February 2015 and Defendant Blackwood immediately implemented this management style at Southeastern VA.

60.     Upon information and belief, an investigation into Defendant Blackwood in April 2020, identified chronic understaffing and well as the altering of medical records to conceal Southeastern VA's chronic understaffing and other shortcomings. [4]

61.     Compassus Defendants, provide hospice and palliative care services to residents at Southeastern VA.

62.     At all times relevant hereto, Compassus Defendants, by and through their employees, agents, and servants provided hospice care to Plaintiff's decedent.

---

[4] *See* https://www.inquirer.com/news/southeastern-veterans-center-coronavirus-deaths-chester-county-nursing-home-rohan-blackwood-20200530.html

63.     Compassus Defendants provided hospice and palliative care to Plaintiff's decedent through RNs, LPNs and/or CNAs during Plaintiff's decedent's residency at Southeastern VA.

**Factual Allegations Surrounding Improper Transfer Causing Left Femur Fracture and Pain and Suffering**

64.     On January 29, 2018, Henrietta Drew was admitted to Southeastern VA.

65.     On January 30, 2018 the Care Plan documented "Resident at risk for falling R/T generalized muscle weakness, osteoporosis, abnormalities of gait and mobility." Said Care Plan contains documentation that this entry was updated on July 1, 2019 by Deidre Smith, RN/RNAC.

66.     The Minimum Data Set (MDS) completed on March 11, 2019 documented that Henrietta Drew required a two+ persons physical assist for transfers, defined as "how resident moves between surfaces including to or from: bed, chair, wheelchair, standing position (excludes to/from bath/toilet)".

67.     The MDS completed on March 11, 2019 documented that Henrietta Drew was "not steady, only able to stabilize with staff assistance" when moving from seated to standing position and during surface-to-surface transfers, defined as transfer between bed and chair or wheelchair.

68.     The MDS completed on June 3, 2019 documented that Henrietta Drew required a two+ persons physical assist for transfers, defined as "how resident moves between surfaces including to or from: bed, chair, wheelchair, standing position (excludes to/from bath/toilet)".

69.     The MDS completed on June 3, 2019 documented that Henrietta Drew was "not steady, only able to stabilize with staff assistance" when moving from seated to standing position and during surface-to-surface transfers, defined as transfer between bed and chair or wheelchair.

70.     The MDS completed on June 25, 2019 documented that Henrietta Drew required a

two+ persons physical assist for transfers, defined as "how resident moves between surfaces including to or from: bed, chair, wheelchair, standing position (excludes to/from bath/toilet)".

71.     Henrietta Drew was non-ambulatory during her residency at Southeastern Veterans' Center.

72.     The notes from the July 1, 2019 SEVC IDCP Team Meeting state that Henrietta Drew began Hospice care with Compassus Defendants on June 10, 2019.

73.     The July 1, 2019 SEVC IDCP Team Meeting notes document that Henrietta Drew in not a fall risk, in the absence of documentation that Ms. Drew's capacity to ambulate and transfer had improved from previous assessments on March 11, 2019, June 3, 2019, and June 25, 2019 whereby it was deemed that she required a two+ person assist.

74.     In the evening of August 15, 2019, Henrietta Drew sustained a fracture of the left femur while being transferred from the wheelchair into bed.

75.     The Resident Progress Notes contain three different versions of the incident.

76.     The Resident Progress Note of August 15, 2019 at 9:38 PM by Mr. Zakpa R. Tody, RN documents the following:

> 2010 - unit nurse called this writer to report that resident left leg was rotated and shorter than the right leg. This writer assessed resident with another RN and noticed the following. Left lower extremity is shorter compare to the right lower extremity. Left leg is rotated inward. There's a protruding mass below left hip. CNA reported that he transferred resident from w/c to bed. Resident is stand-pivot for transfers according to her care plan. Per CNA, resident did not yell during transferred. No popping sounds heard. CNA states resident was unable to bear weight during transfer so he placed her on the edge of the bed and left her feet into bed. After getting resident in bed, he noticed her left leg shorter than the right. CNA proceeded to notify her charge nurse. Resident is currently on hospice. Resident has hx of osteoporosis and right lung mass. Code: DNR, DNI, DNH. Hospice called. Hospice will be in to assess resident. On call provider notify. ADON made aware. POA aware. POA did say resident has hx of car accident when she was in her 30's.

*2010 – unit nurse called this writer to report that resident left leg was rotated and shorter than the right leg. This writer assessed resident with another RN and noticed the following. Left lower extremity is shorter compare to the right lower extremity. Left leg is rotated inward. There's a protruding mass below left hip. CNA reported that he transferred resident from w/c to bed. Resident is stand-pivot for transfers according to her care plan. Per CNA, resident did not yell during transferred. No popping sounds heard. CNA said after resident was made comfortable in bed, he noticed her left leg shorter than the right. CNA proceeded to notify her charge nurse. Resident is currently on hospice. Resident has hx of osteoporosis. Code: DNR, DNI, DNH. Hospice called. Hospice will be in to assess resident. On call provider notify. ADON made aware. (Edited by: Mr. Zakpa R. Tody, RN on 08/15/2019 09:58 PM Reason: More data available)*

*2010 - unit nurse called this writer to report that resident left leg was rotated and shorter than the right leg. This writer assessed resident with another RN and noticed the following. Left lower extremity is shorter compare to the right lower extremity. Left leg is rotated inward. There's a protruding mass below left hip. CNA reported that he transferred resident from w/c to bed. Resident is stand-pivot for transfers according to her care plan. Per CNA, resident did not yell during transferred. No popping sounds heard. CNA said after resident was made comfortable in bed, he noticed her left leg shorter than the right. CNA proceeded to notify her charge nurse. Resident is currently on hospice. Resident has hx of osteoporosis. Code: DNR, DNI, DNH. Hospice called. Hospice will be in to assess resident. On call provider notify. ADON made aware. POA aware. POA did say resident has hx of car accident when she was in her 30's. (Edited by: Mr. Zakpa R. Tody, RN on 08/15/2019 10:21 PM Reason: More data available)*

*2010 - unit nurse called this writer to report that resident left leg was rotated and shorter than the right leg. This writer assessed resident with another RN and noticed the following. Left lower extremity is shorter compare to the right lower extremity. Left leg is rotated inward. There's a protruding mass below left hip. CNA reported that he transferred resident from w/c to bed. Resident is stand-pivot for transfers according to her care plan. Per CNA, resident did not yell during transferred. No popping sounds heard. CNA states resident could not stand and pivot. After getting resident in bed, he noticed her left leg shorter than the right. CNA proceeded to notify her charge nurse. Resident is currently on hospice. Resident has hx of osteoporosis. Code: DNR, DNI, DNH. Hospice called. Hospice will be in to assess resident. On call provider notify. ADON made aware. POA aware. POA did say resident has hx of car accident when she was in her 30's. (Edited by: Mr. Zakpa R. Tody, RN on 08/15/2019 10:23 PM Reason: More data available)*

*2010 - unit nurse called this writer to report that resident left leg was rotated and*

*shorter than the right leg. This writer assessed resident with another RN and noticed the following. Left lower extremity is shorter compare to the right lower extremity. Left leg is rotated inward. There's a protruding mass below left hip. CNA reported that he transferred resident from w/c to bed. Resident is stand-pivot for transfers according to her care plan. Per CNA, resident did not yell during transferred. No popping sounds heard. CNA states resident could not stand and pivot. After getting resident in bed, he noticed her left leg shorter than the right. CNA proceeded to notify her charge nurse. Resident is currently on hospice. Resident has hx of osteoporosis and right lung mass. Code: DNR, DNI, DNH. Hospice called. Hospice will be in to assess resident. On call provider notify. ADON made aware. POA aware. POA did say resident has hx of car accident when she was in her 30's. (Edited by: Mr. Zakpa R. Tody, RN on 08/16/2019 10:08 PM Reason: More data available)*

77.     It is unclear if the CNA that was transferring Plaintiff's decedent when she was injured was an employee of Southeastern VA or Compassus Defendants.

78.     On August 15, 2019 at 10:48 PM, Tody, RN notified the provider on call, who ordered Morphine 10 mg every 4 hours. Tody, RN documented that Plaintiff was made aware.

79.     Plaintiff requested x-ray be taken, but Nurse Tody attempted to convince Plaintiff to not have x-rays done.

80.     On August 16, 2019 at 12:04 AM, a foley catheter was inserted and Roxanol was given for pain management prior to care. Resident's respirations are noted to be increased, rapid, and shallow with SPO2 90% on room air. Oxygen at 2L/min was administered.

81.     On August 16, 2019, it is documented that Resident is experiencing severe pain, and is guarding her left leg and grimacing.

82.     On August 16, 2019 at 7:55 AM, JoAnn C. Young, RN spoke with Plaintiff, and informed her that getting x-rays would be very painful, as the leg and hip needed to be moved for imaging.

83.     During said phone call on August 16, 2019 at 7:55 AM, Plaintiff asked why the

injury to the hip occurred, to which nurse Young, RN replied that Resident had a diagnosis of osteoporosis and her advanced age a pathological fracture could occur. The information regarding the transfer of Resident from the wheelchair into bed was not provided to Plaintiff.

84. Plaintiff in response requested x-rays be done.

85. On August 16, 2019 at 10:35 AM, Plaintiff called and demanded x-ray of her mother's hip performed to find out what happened.

86. Deborah T. Mullane, DON, also discussed with Plaintiff her mother's diagnosis of osteoporosis, which can cause pathological fractures, but did not provide any information regarding the transfer of Resident from the wheelchair into bed.

87. On August 16, 2019 at 3:30 PM, it is documented that Lackawanna Mobile X-ray technician performed the x-ray of the left hip and left lower extremity, and that the AP view was obtained, but the lateral view was unable to be obtained due to Resident's discomfort with movement.

88. The Lackawanna Mobile X-ray report dated August 16, 2019, documents that the x-ray of the left femur, hip, knee and lower leg was performed at 7:37:34 AM. The results revealed a moderately displaced overriding acute fracture of the proximal shaft of the left femur, with clinical correlation and orthopedic consultation suggested; soft tissue swelling over the left malleolus with unclear etiology; relatively mild osteoarthritis of the left hip and osteopenia of the left knee.

89. On August 17, 2019 at 12:30 AM, it is documented that MD made aware of results of said hip x-rays, and morphine was recently increased to address pain due to possible fracture.

90. Plaintiff's decedent continued to receive Roxanol regularly from approximately

two hours post-injury through August 21, 2019, receiving doses every four (4) hours around-the-clock, with prn doses between the scheduled doses.

91.     The reasons for the prn dosages include s/s of pain; guarding left leg; s/s of severe pain; s/s of discomfort; pain management prior to care; moaning and guarding leg; grimacing when reposition[ed]; grabbing at blankets; and repositioning pain.

92.     On August 17, 2019, Resident's intake of food and fluids declined to just sips of fluids, and responsiveness began declining.

93.     Plaintiff's decedent's respiratory status continued to worsen on or about August 20, 2019 until her death on August 21, 2019, after receiving the aforementioned regular and frequent dosages of morphine, which is a known respiratory depressant.

94.     The Resident Progress Note of August 20, 2019 at 9:50 AM by Christine Amole, RN, documents that a call was received from Plaintiff, requesting a call from the provider to discuss casting and IV feed.  Provider notified.  There is no documentation in the medical record of a follow-up response to this request.

95.     The Resident Progress Note of August 20, 2019 by Dr. William C. Hunter, MD at 11:02 AM includes the following documentation:

> *On 08/15/19, Ms. Drew was noted to have a rotated, shortened left leg.  Follow up x-ray revealed a moderately displaced overriding acute fracture of the proximal shaft of the left femur.* **With no known trauma**, *with a high degree of medical certainty, this facture likely represents a spontaneous pathological fracture in an elderly woman with a known history of osteoporosis.*

> *On 08/15/19,* **while seated in her wheelchair**, *Ms. Drew was noted to have a rotated, shortened left leg.  Follow up x-ray revealed a moderately displaced overriding acute fracture of the proximal shaft of the left femur.* **With no known trauma**, *with a high degree of medical certainty, this facture likely represents a spontaneous pathological fracture in an elderly woman with a known history of*

*osteoporosis. (Edited by Dr. William C. Hunter, MD on 08/20/2019 11:32  Reason: Incorrect data )*

96.     Resident remained on bedrest from the time of the hip fracture on August 15, 2019 until her death on August 21, 2019.

97.     On August 21, 2019 at 11:30 PM, Karen E. Heagerty-Lopez, RN was called to room by CNA.  Resident found without pulse, breath sounds or blood pressure.

98.     Immediately after said incident of August 15, 2019, the nursing staff and/or other caregivers attempted to conceal from Plaintiff what happened.

99.     Immediately after said incident of August 15, 2019, the nursing staff and/or other caregivers failed to notify the Department of Health of the improper transfer and injury to Plaintiff's decedent.

100.    Defendants' nursing staff and/or other caregivers knowingly and intentionally failed to follow the order that Plaintiff's decedent was to have a 2+ persons physical assist for transfers, defined as "how resident moves between surfaces including to or from: bed, chair, wheelchair, standing position".

101.    Defendants' nursing staff and/or other caregivers attempted to conceal and/or misrepresent the facts of said incident of August 15, 2019, as evidenced by the aforementioned five (5) different documented versions of said incident.

102.    Defendants' nursing staff and/or other caregivers knowingly and intentionally misrepresented the facts of said incident of August 15, 2019, as evidenced by the aforementioned

documentation of Dr. Hunter that there was no known trauma, and that the leg length discrepancy was noted while Plaintiff's decedent was seated in the wheelchair prior to the said transfer to the bed.

103.    Defendants' nursing staff and/or other caregivers knowingly and intentionally misrepresented the facts of said incident of August 15, 2019 as evidenced by informing Plaintiff, that she had a diagnosis of osteoporosis, and at her advanced age a pathological fracture could occur.

104.    The information regarding the transfer of Plaintiff's decedent from the wheelchair into bed, resulting in the aforementioned injury, pain and suffering, was not provided to Plaintiff.

105.    Defendants' nursing staff and/or other caregivers knowingly and intentionally misrepresented the facts of said incident of August 15, 2019 because Plaintiff's decedent was unable to communicate the facts of the incident due to her altered communication skills related to her dementia.

106.    Plaintiff's decedent experienced significant and severe pain and suffering due to the aforementioned hip fracture.

107.    As a result of the substandard and negligent care received by Plaintiff's decedent from Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as their individual and/or collective employees, agents, all nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents, Plaintiff's decedent sustained a moderately displaced overriding acute fracture of the proximal shaft of the left femur, and associated severe pain and suffering, and untimely death.

108.    Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as their  individual and/or collective employees, all nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents, had a duty to ensure that all persons providing care within Southeastern VA were competent, adequately trained, adequately supervised and adequately assisted to provide that care to Plaintiff's decedent, including but not limited to how to properly transfer residents.

109.    At all times material hereto, Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as all nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents owed a duty to Plaintiff's decedent to properly transfer her using a 2+ persons physical assist, and/or document incidents of improper transfer that caused serious injury.

110.    Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as their individual and/or collective employees, all nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents, had a duty to formulate and enforce adequate rules and policies to ensure quality care for residents such as Plaintiff's decedent.

111.    Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as their individual and/or collective employees, agents, all nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents, had a duty to accurately report Plaintiff's decedent's mechanism of injury to other medical providers, including Dr. Hunter.

112.    Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as

their individual and/or collective employees, agents, all nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents, had a duty to accurately report Henrietta Drew's mechanism of injury to Plaintiff for Plaintiff's decedent.

113.    Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as their individual and/or collective employees, agents, nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents intentionally falsified key clinical information about Plaintiff's decedent in her medical chart.

114.    Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as their individual and/or collective employees, nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents intentionally failed to document and/or report the improper transfer on or about August 15, 2019, to protect themselves from any regulatory violations.

115.    As a result of Defendants Southeast VA, Blackwood, and/or Compassus Defendants, as well as their individual and/or collective employees, nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents, substandard care and treatment was provided to Plaintiff's decedent and resulted in horrific suffering, severe and consistent pain up from her fractured left femur.

## ALLEGATIONS AS TO INSUFFICIENT STAFFING AND OTHER STATUTORY VIOLATIONS

116.    Southeastern VA is a Medicare-certified facility that is required to comply with federal standards, including but not limited to, setting and maintaining staffing levels to the aggregate acuity level of the patients within their facility.

117.     Throughout Plaintiff's decedent's stay at Southeastern VA, Southeastern VA and Defendant Blackwood intentionally and grossly understaffed the Southeastern VA, and the understaffing caused a significant decrease in care that should have been provided by defendants to Plaintiff's decedent and lead to her injuries in this case and untimely death.

118.     Nursing facilities, like Southeastern VA, are required to submit Medicare annual reports that identify, among other things, the patient census and the hours of respective clinical staff.

119.     By dividing the clinical hours worked by the patient census it is possible to determine how many hours the nursing facility paid for each category of direct caregivers per resident per day for the time period covered by that particular cost report.

120.     This number is referred to as the "HPPD".

121.      Upon information and belief, from even before Plaintiff's decedent's residency commenced on or about January 19, 2018 and leading up to her passing on August 21, 2019, Southeastern VA and Defendant Blackwood failed to provide the level of staffing necessary to meet the needs of their residents.

122.     Defendant Blackwood was the administrator at Southeastern VA from February 2015 until his suspension in May 2020.  During Defendant Blackwood's tenure as the nursing home administrator or commandant and individual who was the final decision maker and ultimately responsible for oversight of Southeastern VA, he intentionally and chronically understaffed RN's, LPN's, and their CNA's resulting in a net significant savings to the facility.

123.     According to the Morgan, Lewis & Bockius LLP investigation report obtained by Plaintiff's counsel, this was an investigation into the COVID-19 Outbreak at the Southeastern

VA, and prior to the COVID-19 pandemic "staffing levels at SEVC traditionally have been a concern for DMVA."

124.    However, documentation on Southeastern VA's staffing data is not publicly available and Plaintiff will need to obtain documentation such as Case Mix Indexes, punch detail reports, staffing schedules, RUG levels, facility floor plans, acuity report, facility census report and HPPD to be able to demonstrate the above intentional staffing shortfalls and the associated substantial savings associated with this intentional understaffing.

125.    Plaintiff alleges that Defendants Blackwood and Southeastern VA, jointly and/or separately, exercised control over the operation and management of Southeastern VA prior to and during Plaintiff's decedent's period of residency there, including but not limited to, the creation, setting, funding and/or implementation of budgets; the monitoring of resident acuity levels; the monitoring of staffing levels; control over resident admissions and discharges; and control over the number of hours of direct care provided to the residents of Southeastern VA by RNs, LVNs, and CNAs.

126.    Plaintiff alleges that each of these managerial and operational functions were intentional and had a direct impact on the amount and quality of care delivered to Plaintiff's decedent and were taken in furtherance of operational and managerial objectives.

127.    Plaintiff alleges that Defendants Blackwood and Southeastern VA engaged in a systematic process of ensuring Southeastern VA maintained the highest acuity levels possible while failing to provide sufficient and qualified staff to meet the individual needs of their residents during Plaintiff's decedent's period of residency therein.

128.     Plaintiff alleges that this understaffing, although profitable for Defendants Blackwood and Southeastern VA, directly resulted in their failure to provide the necessary and basic services Plaintiff's decedent needed.

129.     Such understaffing created a perfect formula for not having proper assessments, supervision, monitoring, training, assistance and implementation of necessary medical and/or nursing treatment that would have prevented both of Plaintiff's decedent's horrific injuries and untimely death.

130.     Furthermore, upon information and belief, Defendant Blackwood maintained and encouraged a culture at Southeastern VA where staff was afraid to raise any concerns related to patient care and treatment for fear of retaliation from Defendant Blackwood.

131.     Upon information and belief, Defendant Blackwood also maintained and encouraged a culture at Southeastern VA where staff falsified documentation, ignored Southeastern VA policies and procedures, and failed to follow state and federal nursing home regulations.

132.     As such, Defendant Blackwood, as the final decision maker at Southeastern VA, personally put the health and safety of the veteran residents at Southeastern VA at risk by consciously and knowingly fostering, creating and/or maintaining a facility that ignored its own policies and procedures, ignored state and federal regulations, and had its own unwritten rules that placed veteran residents like Henrietta Drew in harm's way.


**COUNT I: DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE VIA 42 U.S.C. § 1983 SURVIVAL ACTION – IMPROPER TRANSFER, LEFT FEMUR FRACTURE AND DEATH**

**PLAINTIFF VS. DEFENDANTS ROHAN BLACKWOOD, NHA, in his individual capacity; AND SOUTHEASTERN VETERANS' CENTER**

133.    All the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

134.    Southeastern VA is owned, operated and controlled by the Commonwealth of Pennsylvania's Department of Military and Veterans Affairs, and at all times relevant to this Amended Complaint was acting under the color of state law.

135.    Defendant Blackwood was the commandant or nursing home administrator and was the final decision maker and ultimately responsible for the health and safety of the veteran residents at Southeastern VA, including Henrietta Drew.

136.    Defendants are bound generally by the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") which was contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

137.    Defendants are also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

138.    The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

139.    Upon information and belief, Southeastern VA and Defendant Blackwood, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Southeastern VA and Defendant Blackwood failed to implement and follow appropriate

custom and policies and/or, in the alternative, that Southeastern VA and Defendant Blackwood

had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

140.    Southeastern VA and Defendant Blackwood, in derogation of the above statutes

and regulations, and as a custom and policy, failed to comply with the regulations, as follows:

a.    By failing, as a custom and policy, to promote the care of residents, including Ms. Drew, in a manner and in an environment that maintained or enhanced her dignity, as required by 42 C.F.R. § 483.15 and 42 U.S.C. § 1396r(b)(1)(A);

b.    By failing, as a custom and policy, to develop a comprehensive Care Plan and assessment for residents, including Ms. Drew, as required by 42 C.F.R. § 483.20 and 42 U.S.C. § 1396r(b)(2)(A);

c.    By failing, as a custom and policy, to provide residents, including Ms. Drew, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.25 and 42 U.S.C. § 1396r(b)(3)(A);

d.    By failing, as a custom and policy, to provide residents, including Ms. Drew, the necessary care and services to preclude them from experiencing a reduction in range of motion and/or providing appropriate treatment and services to increase range of motion, as required by 42 C.F.R. § 483.25(e) and 42 U.S.C. § 1396r(b)(3)(A);

e.    By failing, as a custom and policy, to periodically review and revise a patient's or resident's written Plan of Care, including Ms. Drew, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

f.    By failing, as a custom and policy, to conduct an assessment of a patient or resident, including Ms. Drew, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant

change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(ii);

g.      By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising Ms. Drew's Plan of Care, as required by 42 U.S.C. § 1396r(b)(3)(D);

h.      By failing, as a custom and policy, to ensure that patients or residents, including Ms. Drew, were provided medically related social services to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.25 and 42 U.S.C. § 1396r(b)(4)(ii);

i.      By failing, as a custom and policy, to ensure that an ongoing program, directed by a qualified professional, of activities designed to meet the interests and the physical, mental and psycho-social wellbeing of each resident or patient, including Ms. Drew, was implemented, as required by 42 C.F.R. § 483.25 and 42 U.S.C. § 1396r(b)(4)(A)(v);

j.      By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

k.      By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Ms. Drew, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.30 and 42 U.S.C. § 1396r(b)(4)(C);

l.      By failing, as a custom and policy, to provide nurse aides that are competent to provide nursing or nursing-related services, as required by 42 C.F.R. § 1396r(b)(5)(A)(i)(I));

m.      By failing, as a custom and policy, to offer competency evaluation and training, including but not limited to programs for nurse aides, as required by 42 C.F.R. § 1396r(b)(5)(B);

28

n.      By failing, as a custom and policy, to maintain clinical records on all residents, including Ms. Drew, including but not limited to the Plans of Care and resident's risk assessments, as required by 42 C.F.R. § 1396r(b)(6)(C);

o.      By failing, as a custom and policy, to ensure that Southeastern VA was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Ms. Drew, to attain or maintain their highest practicable level of physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.75, 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(1)(C);

p.      By failing, as a custom and policy, to ensure that the Southeastern VA and Defendant Blackwood met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

q.      By failing, as a custom and policy, to ensure that Southeastern VA was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Ms. Drew, and in operating such a facility as Southeastern VA, as required by 42 U.S.C. § 1396r(d)(4)(A); and,

r.      By failing, as a custom and policy, to ensure that Defendant Blackwood and Southeastern VA's director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Ms. Drew, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(a)(W).

141.     Southeastern VA and Defendant Blackwood were deliberately indifferent to the substandard level of nursing care that the Southeastern VA staff provided to residents like Plaintiff's decedent.

142.     Southeastern VA and Defendant Blackwood failed to adequately train staff to prevent improper transfers causing, contributing, or increasing the risk of serious injuries.

143. Southeastern VA and Defendant Blackwood also failed to train staff to ensure that the staff, including RNs, LPNs, and CNAs, knew how to properly transfer residents like Plaintiff's decedent and prevent injuries.

144. The repeated and systemic failures in the preceding Paragraph demonstrate that Southeastern VA and Defendant Blackwood, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Southeastern VA and Defendant Blackwood failed to implement and follow appropriate customs and policies and/or, in the alternative, that Southeastern VA and Defendant Blackwood had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

145. Additionally, the culture fostered and created by Defendant Blackwood at Southeastern VA is exemplified by the failure of the Southeastern VA staff to accurately and truthfully document the incident that fractured Plaintiff's decedent's left femur and caused her great pain and suffering.

146. Furthermore, Defendant Blackwood created and fostered a culture at Southeastern VA that resulted improper documentation of Plaintiff's decedent's clinical condition, leading to her severe injuries.

147. Southeastern VA was aware when they hired Defendant Blackwood of history of running chronically understaffed facilities that disregard their own policies and procedures and developed a culture where staff was encouraged and rewarded to ignore state and federal nursing home regulations, placing nursing home residents in harm's way.

148. Additionally, Southeastern VA and Defendant Blackwood failed to properly train its staff in the following manner:

a.  Failure to adequately train its RNs and LPNs on how to conduct appropriate transfers to prevent avoidable injuries in residents like Henrietta Drew.

b.  Failure to adequately train its CNAs to conduct appropriate transfers to prevent avoidable injuries in residents like Henrietta Drew.

c.  Failure to adequately train RNs, LPNs, and CNAs the importance to timely report changes in a residents' condition.

d.  Failure to adequately train its staff to accurately document incidents like the improper transfer by staff of Henrietta Drew.

e.  Failure to adequately train its nursing supervisors to monitor the occurrence of improper transfers and/or falls to identify when additional RNs, LPNs and/or CNAs are necessary to prevent injuries.

f.  Failure to adequately train RNs, LPNs and CNAs how to properly transfer residents, like Henrietta Drew, using a 2+ person physical assist.

149.   As a proximate result Defendants actionable derogation of their regulatory and statutory responsibilities as above-described, Plaintiff's decedent was injured as previously referenced and endured pain, suffering and distress, as a result of the poor care and treatment which allowed her to suffer harm as described herein.

150.   As such, Henrietta Drew suffered and her estate is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988:

a.  Pain, suffering, inconvenience, anxiety and nervousness of Ms. Drew, as related to the injuries that she suffered as a result of the negligent treatment and care rendered by Defendant as a result of her left femur fracture   and subsequent pain;

b.  Medical and nursing expenses incurred on Ms. Drew; and,

c.  Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff, Georgianne McEntyre, Individually and as Executor of the Estate of Henrietta Drew, demands compensatory and consequential damages from the Defendants Rohan E. Blackwood, NHA, individually as the commandant or nursing home administrator of Southeastern Veterans' Center, and Southeastern Veterans' Center, a Commonwealth owned and operated skilled nursing facility, in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

## COUNT II: DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE VIA 42 U.S.C. § 1983 WRONGFUL DEATH

### PLAINTIFF VS. DEFENDANTS ROHAN BLACKWOOD, NHA AND SOUTHEASTERN VETERANS' CENTER

152.    All the preceding Paragraphs of this Complaint are incorporated, as if set forth at length herein.

153.    As a proximate result of Southeastern VA and Defendant Blackwood's actionable derogation of its regulatory and statutory responsibilities, Plaintiff's Decedent was injured as previously referenced, and suffered pain, distress and death as a result of the poor care and treatment she received before dying on August 21, 2019.

154.    As such, Plaintiff has suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988:

       **a.**      She/They have expended money for nursing and medical expenses related to the death of Ms. Drew;

       **b.**      She/They have expended money for funeral and Estate expenses because of the death of Ms. Drew;

    **c.**    She/They have been denied, and have forever lost the services, assistance, guidance, counseling, companionship of society of Ms. Drew; and,

    **d.**    She/They have been, and will forever be, deprived of the financial support and all pecuniary benefits which they would have received from Ms. Drew.

WHEREFORE, the Plaintiff, Georgianne McEntyre, Individually and as Executor of the Estate of Henrietta Drew, demands compensatory and consequential damages from the Defendants Rohan E. Blackwood, NHA, individually as the commandant or nursing home administrator of Southeastern Veterans' Center, and Southeastern Veterans' Center, a Commonwealth owned and operated skilled nursing facility, in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

## COUNT III – NURSING HOME NEGLIGENCE -
## SURVIVAL ACTION PURSUANT TO 42 PA.C.S. §8302

**PLAINTIFF v. DEFENDANTS ROHAN BLACKWOOD, NHA AND SOUTHEASTERN VETERANS' CENTER and/or JOHN DOE MANAGEMENT COMPANY; JOHN DOE STAFFING; JOHN DOE ADMINISTRATIVE SERVICES; COMPASSUS HOSPICE AND PALLIATIVE CARE – PHILADELPHIA; AND COMPASSUS – GREATER PHILADELPHIA; AND COMPASSUS – PHILADELPHIA II; AND COMPASSUS OP PENNSYLVANIA, LLC**

193.    Plaintiff hereby incorporates the above referenced paragraphs of the within Amended Complaint as if set forth more fully at length herein.

194.    Plaintiff brings this Count, Survival Action, pursuant to 42 Pa.C.S. §8302, with claims for all available damages, on behalf of the Estate of Henrietta Drew for her left femur fracture, and associated pain and suffering.

195.     Southeastern VA and Defendant Blackwood, by and through their individual and/or collective employees, nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents owed Henrietta Drew a duty to properly transfer her without causing serious injuries to her body.

196.     Compassus Defendants, by and through their individual and/or collective employees, nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents owed Henrietta Drew a duty to properly transfer her without causing serious injuries to her body.

197.     Southeastern VA and Defendant Blackwood, by and through their individual and/or collective employees, nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents owed Henrietta Drew a duty to properly report, assess her for any injuries, implement orders and provide medications to prevent avoidable pain and suffering.

198.     Compassus Defendants, by and through their individual and/or collective employees, nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents owed Henrietta Drew a duty to properly report, assess her for any injuries, implement orders and provide medications to prevent avoidable pain and suffering.

199.     The aforementioned incident was caused by the willful misconduct, recklessness, negligence and carelessness of Defendants, acting by and through their respective individual and/or collective employees including but not limited to nursing supervisors, physicians,

physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or

ostensible agents and/or work persons, and consisted, *inter alia*, of the following:

    a.   causing, allowing and/or failing to prevent physical injury to Ms. Drew,

    b.   failing to provide proper transfer precautions,

    c.   failing to document improper transfer and injuries sustained during transfer;

    d.   failing to provide proper patient assessment,

    e.   failure to provide sufficient staff, with appropriate training;

    f.   failing to ensure and/or provide safe patient transfers;

    h.   failure to ensure transfers were done in compliance with care plans;

    i.   failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper patient assessment;

    j.   failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper transfer protections;

    k.   failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper patient transfers;

    l.   failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing;

    m.   failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing required by patient acuity;

    n.   failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing required to ensure safe fall protection;

    o.   failing to create, adopt, implement, train, supervise and/or enforce proper and necessary systems, practices, protocols, policies, and or guidelines to ensure proper staffing required to ensure safe patient transfers;

    p.   failing to ensure proper and necessary staffing to prevent injury to Henrietta Drew, and thereby causing said injury,

    q.   systematic and ongoing failure to properly supervise, monitor, observe, and assess the Plaintiff's decedent's medical condition and/or physical capabilities;

r.   failure to transfer Plaintiff's decedent to the hospital for emergent care in a timely fashion;

s.   failure to supervise medical care rendered to Plaintiff's decedent;

t.   failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psychological well-being of Plaintiff's decedent;

u.   ongoing failure to attend to Plaintiff's decedent;

v.   ongoing failure to hire and train appropriate and competent medical and nursing personnel to properly monitor, supervise and/or treat the Plaintiff's decedent's medical condition;

w.   ongoing failure to hire sufficient number of trained and competent medical and nursing personnel who knew how to meet the decedent's medical needs;

x.   ongoing retention of and assignment of unfit, unqualified and incompetent medical and nursing personnel, who directly caused Henrietta Drew's left femur fracture;

y.   ongoing failure to provide 24-hour nursing services from enough qualified medical and nursing personnel to meet the total nursing needs of Plaintiff's decedent;

z.   negligently allowing improperly trained staff to provide basic care and monitoring of Plaintiff's decedent;

aa.   ongoing failure to provide sufficient numbers of staff to meet the Plaintiff's decedent's fundamental care needs, including adequate supervision during ADL's and/or patient transfers leading to increased risk of injury, and

bb.   violation of rules, regulations and statutes as plead above and further developed during discovery.

200.   As a direct and proximate result of the recklessness, negligence and carelessness of Defendants, Plaintiff's decedent, Henrietta Drew, was improperly transferred and her left hip-leg was fractured.

201.   As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, Plaintiff's decedent, Henrietta Drew, was caused to lay in her bed at Southeastern VA for the next six days until her untimely passing.

202.    As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, Plaintiff's decedent was caused to suffer, *inter alia*, the injuries described above and contained within medical records, overwhelming and extreme physical pain and agony, mental anguish, severe emotional pain and suffering.

203.    Southeastern VA and Compassus Defendants, individually and/or collective employees including but not limited to nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents and/or work persons, failed to exercise reasonable care as alleged above comprised outrageous conduct under the circumstances, manifesting a wanton and reckless disregard of the rights of Plaintiff's decedent.

WHEREFORE, the Plaintiff, Georgianne McEntyre, Individually and as Executor of the Estate of Henrietta Drew, demands judgment against Defendants Rohan E. Blackwood, NHA, individually as the commandant or nursing home administrator of Southeastern Veterans' Center, and Southeastern Veterans' Center, a Commonwealth owned and operated skilled nursing facility, Compassus Hospice and Palliative Care – Philadelphia, Compassus – Greater Philadelphia, Compassus - Philadelphia II, and Compassus OP Pennsylvania, LLC, in excess of Seventy-Five Thousand Dollars $75,000.00 together with all costs, delay damages, compensatory damages, punitive damages all damages deemed appropriate by the Court and all other relief which this Court deems just and appropriate.

**COUNT IV– NURSING HOME NEGLIGENCE – IMPROPER TRANSFER, LEFT FEMUR FRACTURE, AND DEATH
WRONGFUL DEATH PURSUANT TO 42 PA.C.S. §8301**

**PLAINTIFF v. DEFENDANTS ROHAN BLACKWOOD, NHA AND SOUTHEASTERN VETERANS' CENTER and/or JOHN DOE MANAGEMENT COMPANY; JOHN DOE STAFFING; JOHN DOE ADMINISTRATIVE SERVICES; COMPASSUS HOSPICE AND PALLIATIVE CARE – PHILADELPHIA; AND COMPASSUS – GREATER PHILADELPHIA; AND COMPASSUS – PHILADELPHIA II; AND COMPASSUS OP PENNSYLVANIA, LLC**

217.    Plaintiff hereby incorporates the above referenced paragraphs of the within Amended Complaint as if set forth more fully at length herein.

218.    Plaintiff brings this Count, a Wrongful Death Action, with all available damages, pursuant to 42 Pa.C.S. §8301.

219.    The aforementioned incident was caused by the willful misconduct, actual malice, negligence and carelessness of Defendants, acting by and through their respective individual and/or collective employees including but not limited to nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents and/or work persons, and consisted, inter alia, as plead in paragraph 208 (a) through (cc) above.

220.    As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, individually and acting by and through their respective individual and/or collective employees including but not limited to nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents and/or work persons, Plaintiff's decedent, Henrietta Drew was caused to lose her life.

221.    As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, individually and acting by and through their respective individual and/or collective employees including but not limited to nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible

38

agents and/or work persons, resulting in the death of Plaintiff's decedent, the beneficiaries described above were caused to lose the pecuniary contributions they could have expected to receive from the decedent and were caused to lose the pecuniary value of services, financial support, society, familial relationship and comfort of the Plaintiff's decedent, her mother Henrietta Drew.

222.    As a direct and proximate result of the recklessness, negligence and carelessness of the Defendants, individually and acting by and through their respective individual and/or collective employees including but not limited to nursing supervisors, physicians, physician's assistants, nurse practitioners, RNs, LPNs, CNAs, therapists, agents, staff and/or ostensible agents and/or work persons, resulting in the death of Plaintiff's decedent, the beneficiaries described above have lost the support, services, society, and comfort of Plaintiff's decedent, her mother Henrietta Drew.

WHEREFORE, the Plaintiff, Georgianne McEntyre, Individually and as Executor of the Estate of Henrietta Drew, demands judgment against Defendants Rohan E. Blackwood, NHA, individually as the commandant or nursing home administrator of Southeastern Veterans' Center, and Southeastern Veterans' Center, a Commonwealth owned and operated skilled nursing facility, Compassus Hospice and Palliative Care – Philadelphia, Compassus – Greater Philadelphia, Compassus - Philadelphia II, and Compassus OP Pennsylvania, LLC, in excess of Seventy-Five Thousand Dollars $75,000.00 together with all costs, delay damages, compensatory damages, all damages deemed appropriate by the Court and all other relief which this Court deems just and appropriate.

Respectfully submitted,

McELDREW YOUNG

/s/ Andrew P. Watto
James J. McEldrew, III, Esquire
Attorney I.D. No. 36411
Daniel Purtell, Esquire
Attorney I.D. No. 310376
Andrew P. Watto, Esquire
Attorney I.D. No. 311873
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
(215) 545-8805 (fax)
jim@mceldrewyoung.com
dpurtell@mceldrewyoung.com
awatto@mceldrewyoung.com

Dated: August 13, 2021

<u>VERIFICATION</u>

I, Andrew P. Watto, Esquire, hereby states that he is the attorney for the Plaintiff in the within matter and verifies that the statements made in the foregoing Complaint are true and correct to the best of his knowledge, information and belief.  The undersigned understands that the statement therein is made subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

McELDREW YOUNG

By:    <u>/s/ Andrew P. Watto, Esquire</u>
        ANDREW P. WATTO, ESQUIRE

Date:  <u>August 13, 2021</u>