## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGIANNE MCENTYRE,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **SOUTHEASTERN VETERANS'** | : | |
| **CENTER** *et al.,* | : | |
| *Defendants* | : | **No. 21-3622** |

## MEMORANDUM

PRATTER, J.                                                    OCTOBER 4, 2022

Georgianne McEntyre brought claims under 42 U.S.C. § 1983, 42 Pa. Cons. Stat. § 8301, and 42 Pa. Cons. Stat. § 8302, individually and on behalf of the estate of Henrietta Drew, against a skilled nursing facility, Southeastern Veterans' Center; the director of that center, Rohan Blackwood; and various third-party contractors. Southeastern and Mr. Blackwood filed a motion to dismiss Ms. McEntyre's complaint for failure to state a claim. For the reasons that follow, the Court grants in part and denies in part Southeastern and Mr. Blackwood's Motion to Dismiss.

### BACKGROUND

Georgianne McEntyre alleges that her mother, Henrietta Drew, received substandard care while at Southeastern due to understaffing, negligence, and poor training of staff. She alleges that this substandard care led to Ms. Drew's death.

Ms. Drew was receiving hospice care at Southeastern. Her care plan stated that she was physically unstable and at risk for falling, so her medical chart required that she be moved by at least two people. On August 15, 2019, while at the facility, Ms. Drew sustained a fracture of the left femur. Ms. McEntyre alleges that her mother's injury was caused by an improper transfer during which only one employee transferred Ms. Drew from her wheelchair into her bed. Ms. Drew's condition then worsened until her death six days later. A nurse at Southeastern, JoAnn

1

Young, informed Ms. McEntyre that Ms. Drew's osteoporosis caused her injury. Deborah Mullane, the director of nursing at the facility, did not mention an improper transfer. Ms. McEntyre claims that the Southeastern employees and staff covered up the facts leading to her mother's injury, along with the circumstances immediately surrounding it, and did not appropriately report the incident to Ms. Drew's other doctors.

Ms. McEntyre makes four claims: 42 U.S.C. § 1983 survival action against Mr. Blackwood (in his individual capacity) and Southeastern relating to the improper transfer and death of Ms. Drew (Count I); 42 U.S.C. § 1983 wrongful death action against Mr. Blackwood (in his individual capacity) and Southeastern (Count II); nursing home negligence survival action under 42 Pa. Cons. Stat. § 8302 against all defendants (Count III); and nursing home negligence wrongful death action under 42 Pa. Cons. Stat. § 8301 against all defendants (Count IV).[1,2] Southeastern and Mr. Blackwood filed a motion to dismiss Ms. McEntyre's complaint in its entirety.[3]

## LEGAL STANDARD

An action may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195

---

[1] The Court previously approved the parties' stipulation to strike all requests and allegations which could give rise to a claim for punitive damages from the complaint without prejudice.

[2] The parties stipulated to a dismissal of the contractor defendants, including Compassus Hospice and Palliative Care-Philadelphia; THI of Pennsylvania of Samaritan Hospice, LLC d/b/a Hospice Compassus – Philadelphia, Newtown Square PA (improperly named as Compassus – Greater Philadelphia); Compassus – Greater Philadelphia II; and Compassus OP Pennsylvania, LLC. However, the Motion to Dismiss filed by the contractor defendants is still pending. The Court will deem moot the contractor defendant's Motion to Dismiss in the accompanying Order.

[3] In addition to the Defendants' Motion to Dismiss, Ms. McEntyre's Motion to Compel Defendants' Request for Production of Documents is also pending. During the September 16, 2022, oral argument on the motion to dismiss, Ms. McEntyre informed the Court that she had received discovery responses from Defendants. Therefore, the Court will deem moot Ms. McEntyre's Motion to Compel in the accompanying Order.

(3d Cir. 2007) (citations and quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S., 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show "more than a sheer possibility that a defendant has acted unlawfully," *Id.*, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

DISCUSSION

Southeastern and Mr. Blackwood argue that Ms. McEntyre's complaint must be dismissed because it fails to state a claim upon which relief may be granted. First, they argue that Ms. McEntyre fails to plead facts sufficient to rise above the level of speculation across all counts. Second, Southeastern and Mr. Blackwood argue that the § 1983 claims alleged in Counts I and II must be dismissed because: (1) Southeastern is immune under the Eleventh Amendment; (2) Ms. McEntyre fails to allege Mr. Blackwood's personal involvement; and (3) Ms. McEntyre lacks standing to bring a § 1983 wrongful death action. Finally, as to the state law negligence claims alleged in Counts III and IV, Southeastern and Mr. Blackwood argue that because Ms. McEntyre alleges corporate negligence claims, they are immune under the Sovereign Immunity Act.

## I.   Ms. McEntyre Fails to Plead Facts That Rise Above the Level of Speculation

Ms. McEntyre's pursues three general theories of liability: (1) inadequate staffing, (2) failure to train and/or supervise, and (3) custom and policy of disregarding regulations. With respect to her inadequate staffing theory, Ms. McEntyre fails to plead how staffing at Southeastern

was "insufficient in numbers or quality," and how this alleged inadequate staffing was a proximate cause of Ms. Drew's injury. *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (finding that plaintiff's allegations failed to support an inadequate staffing claim where she only "alleged that her care was inadequate[ but] she did not allege that staff members were not available or were present too infrequently, for example"). With respect to her failure to train theory, Ms. McEntyre raises no factual allegations to demonstrate that Southeastern or Mr. Blackwood failed to train employees, nor did she allege how this failure to train caused Ms. Drew's injury. *See, e.g., id.* (concluding that a plaintiff's "allegations regarding the number and character of deficiency citations issued to [defendant] by federal and state regulators" met the standard of showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need"). Finally, with respect to the alleged custom and policy of disregarding regulations, Ms. McEntyre alleged a "laundry list" of more than 20 conclusory, boilerplate allegations that Southeastern and Mr. Blackwood violated the Federal Nursing Home Reform Act (FNHRA) with no factual support. *Schlayback v. Berks Heim Nursing & Rehabilitation*, 434 F. Supp. 3d 342, 355-58 (E.D. Pa. 2020).

Ms. McEntyre's complaint is insufficiently pled to survive dismissal because she fails to allege facts that allow the Court to draw the conclusion that the defendants' alleged misconduct *caused* Ms. Drew's injury. For the Court to draw such a conclusion would be "too great a leap." *See Robinson*, 722 F. App'x at199 ("The inference the [plaintiff] asks us to draw from these numbers—that because [the defendant] provided fewer registered nursing hours than some . . . other facilities, violation of patients' rights was 'the plainly obvious consequence'—requires too great a leap." (internal citation omitted)). Thus, the Court finds that her factual allegations are not

"enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To the extent that Ms. McEntyre's claims are not barred by sovereign immunity, she will be granted leave to endeavor to amend and cure these pleading deficiencies.

## II.    Section 1983 Claims

Ms. McEntyre asserts a § 1983 survival action (Count I) and a § 1983 wrongful death action (Count II) against Mr. Blackwood (in his individual capacity) and Southeastern. As discussed below, Southeastern and Mr. Blackwood's Motion to Dismiss is granted with prejudice as to the § 1983 survival action against Southeastern because Southeastern is immune under the Eleventh Amendment. Southeastern and Mr. Blackwood's Motion to Dismiss is granted without prejudice as to the § 1983 survival action against Mr. Blackwood, and Ms. McEntyre is granted leave to amend her complaint as to the allegations giving rise to this claim. Finally, Defendants' Motion to Dismiss is denied as to the § 1983 wrongful death action.

### A.    <u>Southeastern Is Immune from Section 1983 Claims Pursuant to the Eleventh Amendment</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment immunity extends to "unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Further, the immunity provided by the Eleventh Amendment "encompasses not only actions in which the State is named as a defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Ca. v. Doe*, 519 U.S. 425, 429 (1997); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007) (recognizing that immunity provided by the Eleventh Amendment extends to "entities that are considered arms of the state").

The Eleventh Amendment provides an absolute jurisdictional bar because the kind of relief sought is "irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996). There are three exceptions to this jurisdictional bar: "(1) Congressional abrogation of immunity pursuant to the Fourteenth Amendment[,] (2) waiver of immunity by the state," *Krause v. Pa. Dept. of Military and Veterans Affairs*, No. 1:11-CV-1080, 2011 WL 6742519, at *2 (M.D. Pa. Dec. 22, 2011), and (3) suits against state officials in their official capacities for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

### 1. Southeastern Is an Agency of the Commonwealth of Pennsylvania

Southeastern is a state run skilled-nursing home facility controlled, owned and/or operated by the Commonwealth of Pennsylvania's Department of Military and Veteran Affairs (PDMVA). The PDMVA and the veterans' centers it operates—including Southeastern—are agencies of the Commonwealth of Pennsylvania. *See Mazur v. Sw. Veterans Ctr.*, No. 17-826, 2019 WL 4345726, at *40 (W.D. Pa. Sept. 12, 2019); *Krause*, 2011 WL 6742519, at *2–3. Southeastern is protected under Eleventh Amendment immunity; none of the exceptions to the Eleventh Amendment are present here. First, § 1983 "does not abrogate the States' Eleventh Amendment immunity." *Quern v. Jordan*, 440 U.S. 332, 340–41 (1979). Second, the Commonwealth of Pennsylvania has not waived its immunity under the Eleventh Amendment. 42 Pa. Con. Stat. § 8521(b). And finally, Southeastern is a state agency, not a state official, so the *Ex parte Young* exception is inapplicable.

Therefore, Southeastern is immune from Ms. McEntyre's § 1983 claims pursuant to the Eleventh Amendment. *See Mazur*, 2019 WL 4345726, at *40 (holding that because the PDMVA and the veterans' centers operated by the PDMVA "are agencies of the Commonwealth of Pennsylvania and the exceptions to Eleventh-Amendment immunity do not apply to any § 1983 claim asserted in this case[,] Defendants are immune from any private party suit under § 1983 for

6

damages"); *Krause*, 2011 WL 6742519, at *2–3 (holding that the claims asserted against the PDMVA are "barred by the Eleventh Amendment and [are] not cognizable under § 1983" because the PDMVA is "an agency of the Commonwealth of Pennsylvania" and no exceptions to the Eleventh Amendment applied).

### 2.  Ms. McEntyre's *Monell* Claim Against Southeastern Fails

To the extent that Ms. McEntyre attempts to plead around Eleventh Amendment immunity by imputing municipal liability to Southeastern based on its "custom and policy," she is unsuccessful. In *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (2018), the Supreme Court of the United States held that municipalities "can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." The "custom, policy and practice" exception provided by *Monell* does not apply to state agencies, or entities which are considered "an arm of the State." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70–71 (1989). Because Southeastern is a state agency, the "custom, policy and practice" exception to Eleventh Amendment immunity does not apply.

For all of these reasons, Ms. McEntyre's § 1983 survival action claim asserted against Southeastern is dismissed with prejudice.

### B.  Southeastern Is Not a "Person" Under Section 1983

Ms. McEntyre's § 1983 survival action claim against Southeastern also must be dismissed because Southeastern is not a "person" within the meaning of the statute. Section 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (emphasis added). Critical to the success of a § 1983 claim is that the deprivation of rights be committed by a person. A state agency is not a "person" under § 1983. *Krause*, 2011 WL 6742519, at *3 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). Because Southeastern is not a "person" under § 1983, Ms. McEntyre's § 1983 survival action claim against Southeastern must be dismissed with prejudice.

### C. <u>Ms. McEntyre Fails to Sufficiently Plead Mr. Blackwood's Involvement</u>

To sustain a § 1983 claim against an individual defendant, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." (emphasis added)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but these allegations "must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. A civil rights complaint must also allege "the conduct, time, place, and persons responsible." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Ms. McEntyre fails to sufficiently allege Mr. Blackwood's personal involvement in the events that led to Ms. Drew's death. Her allegations against Mr. Blackwood focus on his role as the "final decisionmaker" as the commandant, or nursing home administrator, at Southeastern. These allegations fail to establish that Mr. Blackwood was personally involved in, or had any knowledge of, any improper transfer which Ms. McEntyre alleges caused Ms. Drew's injury.[4] *See*

---

[4] The allegations relating to the improper transfer of Ms. Drew largely do not identify Mr. Blackwood. Instead, they name "Defendants' nursing staff and/or other caregivers" as the individuals at fault.

*e.g., Rode*, 845 F.2d at 1208 ("Rode's assertion that the Governor had 'responsibility for supervising' the other Defendants is irrelevant. Further, Rode failed to show that the Governor had the necessary personal knowledge to sustain the civil rights action as to him."); *Wilson v. Altman*, No. 19-cv-1549, 2019 WL 3714553, at *12 (E.D. Pa. Aug. 6, 2019) ("Merely stating that a party . . . is responsible is insufficient to show that they were personally involved in the alleged conduct."); *Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 474 (W.D. Pa. 2007) (finding that plaintiff's allegations did not establish that the defendant "was *aware* of plaintiff's situation, let alone that she was personally involved" and that the defendant's "status as the 'ultimate supervisor'" was insufficient to establish personal involvement).

For these reasons, Ms. McEntyre's § 1983 survival action claim asserted against Mr. Blackwood is dismissed without prejudice and with leave to amend to allow Ms. McEntyre to try to cure her pleading deficiencies as to the allegations giving rise to this claim.

### D.   Standing for Section 1983 Wrongful Death Actions

In November 2022, the Supreme Court of the United States is scheduled to hear arguments in *Health and Hosp. Corp. of Marion Cnty. v. Talveski*, 6 F.4th 713 (7th Cir. 2021), *cert. granted*,142 S. Ct. 2673 (2022), which presents the questions of whether a person has standing to enforce a private right under § 1983 and whether a family member of a nursing home resident can bring a claim against the nursing home facility and its administrators under § 1983 and the Federal Nursing Home Reform Act. *Id.* Because the resolution of *Talveski* will be controlling as to Ms. McEntyre's § 1983 wrongful death claim, the Court will deny Southeastern and Mr. Blackwood's Motion to Dismiss relating to this claim to await the outcome of *Talveski.*

### III.    State Law Negligence Claims

In Counts III and IV, Ms. McEntyre asserts state law negligence claims against Southeastern and Mr. Blackwood under 42 Pa. Cons. Stat. § 8301 (wrongful death) and 42 Pa. Cons. Stat. § 8302 (survival).

### A.  Wrongful Death and Survival Actions

Wrongful death actions allow the decedent's spouse, children, or parents to "recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa. Cons. Stat. § 8301. Survival actions are a continuation of a cause of action that accrued to the decedent before her death and permit a personal representative to pursue the decedent's cause of action. *Dubose v. Quinlan*, 173 A.3d 634, 645 (Pa. 2017) (citing *Anthony v. Koppers Co., Inc.*, 436 A.2d 181, 185 (Pa. 1981)); *see also* 42 Pa. Cons. Stat. § 8302. "[W]rongful death and survival actions are not substantive causes of action." *Johnson v. City of Phila.*, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015). For wrongful death and survival actions to survive at the motion to dismiss stage, a cognizable underlying cause of action must be pled. *See id.*; *see also Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 757 (W.D. Pa. 2011) (dismissing plaintiff's wrongful death and survival actions "because an underlying claim, such as negligence, is needed for these claims to be cognizant").

### B.  The Cause of Action Underlying Ms. McEntyre's Wrongful Death and Survival Actions Is "Nursing Home Negligence"

Ms. McEntyre asserts "nursing home negligence" as the cause of action underlying her wrongful death and survival actions. She presents a blend of corporate negligence and medical-professional negligence claims.

### 1. Corporate Negligence

"A cause of action in corporate negligence is based on the negligent acts of an institution." *Moser v. Heistand*, 681 A.2d 1322, 1326 (Pa. 1996). The Supreme Court of Pennsylvania first recognized the doctrine of corporate negligence in *Thompson v. Nason Hosp.*, 591 A.2d 703 (Pa. 1991), which held that hospitals owe patients "(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." *Id.* at 707 (internal citations omitted). The Supreme Court of Pennsylvania has since held that the doctrine of corporate negligence is not limited to hospitals. *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 606–07 (Pa. 2012). A nursing home, for example, may be liable if "it fails to uphold the proper standard of care owed to its patient." *Thompson*, 591 A.2d at 707. It must be demonstrated that the nursing home had actual or constructive knowledge of the problems that caused the plaintiff's harm, and that the negligence was a "substantial factor" in bringing about the harm. *Id.* at 708.

For a corporate negligence cause of action to be viable against a Commonwealth entity, sovereign immunity must be waived. *Moser*, 681 A.2d at 1326. But the Commonwealth of Pennsylvania has *not* waived immunity for individuals acting as the corporate entity. *See* 42 Pa. Cons. Stat. § 8522(b)(2) (providing a waiver of immunity for Commonwealth medical facilities based on the negligence of their health care employees *but not for the facilities themselves*) (emphasis added). Any claims that constitute corporate negligence will be barred by sovereign immunity.

11

### 2. Medical-Professional Negligence

Pennsylvania has waived sovereign immunity for "medical-professional liability," defined as "[a]cts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." 42 Pa. Cons. Stat. § 8522(b)(2). Under the medical-professional liability exception, plaintiffs "may bring an action in *respondeat superior* against a Commonwealth agency medical facility." *Moser*, 681 A.2d at 1326. To bring an action in *respondeat superior*, the plaintiff must establish that (1) the health care employee owed a duty to the plaintiff; (2) there was a breach of that duty; (3) the breach was a proximate cause of, or a substantial factor, in bringing about the patient's harm; and (4) the damages directly resulted from the harm. *Osborne v. Lewis*, 59 A.3d 1109, 1114–15 (Pa. Super. 2012). If the negligent employee is not a health care employee as defined by the statute, the entity cannot be held liable under *respondeat superior* because sovereign immunity has not been waived. *See Moser*, 681 A.2d at 1326. Claims against a Commonwealth facility based on the institution's policies, actions or inactions rather than specific acts of individual health care employees do not fall within the medical-professional liability exception to sovereign immunity. *Thrower v. Pennsylvania*, 873 F. Supp. 2d 651, 658 (W.D. Pa. 2012).

### 3. Ms. McEntyre Alleges a Blend of Corporate Negligence and Medical Professional Negligence Claims

Ms. McEntyre alleges a blend of corporate negligence and medical-professional negligence claims. The presence of medical-professional negligence claims does not automatically bring all claims alleged within the medical-professional liability exception. Rather, the Court must evaluate each claim to determine whether it asserts liability against the individual employee or the entity. *See Byrne v. Commonwealth*, No. 561 C.D. 2018, 2019 WL 1284539, at *4–6 (Pa. Commw. Mar.

19, 2019). Any claims that assert liability against the entity—the corporate negligence claims—must be dismissed because they are barred by the Sovereign Immunity Act. *Id.* at *5-6.

Most of the allegations in Ms. McEntyre's complaint are corporate negligence claims because they assert liability against Southeastern, an agency of the Commonwealth of Pennsylvania, and Mr. Blackwood, allegedly an employee acting within his capacity as a Commonwealth employee. Further, the claims against Mr. Blackwood do not fall within the medical-professional liability exception because he is not a "health care employee." *See* 42 Pa. Cons. Stat. § 8522(b)(2). However, several allegations in Ms. McEntyre's complaint do appear to assert liability against individual health care employees. These allegations fall within the medical-professional liability exception and, hence, are not barred by the Sovereign Immunity Act. 42 Pa. Cons. Stat. § 8522(b)(2).

For all of these reasons, Ms. McEntyre's corporate negligence claims are dismissed with prejudice, and her medical-professional negligence claims are dismissed without prejudice and with leave to amend to allow Ms. McEntyre to try to cure her pleading deficiencies.

CONCLUSION

Thus, the Court grants Southeastern and Mr. Blackwood's Motion to Dismiss as to the § 1983 survival action claim in Count I against Southeastern with prejudice and against Mr. Blackwood without prejudice and with leave to amend. The Court denies Southeastern and Mr. Blackwood's Motion to Dismiss as to the § 1983 wrongful death claim in Count II. The Court grants Southeastern and Mr. Blackwood's Motion to Dismiss as to the state law "nursing home negligence" claims in Counts III and IV, with prejudice as to the corporate negligence claims, and without prejudice and with leave to amend as to the medical-professional negligence claims. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

14